UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADRIANN CANARY,<br><br>Plaintiff,<br><br>v.<br><br>DARIN ADAMS, et al.,<br><br>Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 4:25-cv-000077-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Motions to Dismiss filed by Defendants Darin Adams and Matthew Topham[1] and Chad Dotson.[2] The Motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, it is recommended that Defendant Dotson's Motion be granted and that Defendants Adams and Topham's Motion be granted in part and allow Plaintiff the opportunity to amend her Complaint.

I. BACKGROUND

The following facts are taken from Plaintiff's Complaint and the underlying state court cases.[3] Plaintiff sought and received a civil stalking injunction against Stacy Mallory in Utah state court.[4] Plaintiff claims that Defendant Matthew Topham—an officer with the Cedar City Police Department—and Defendant Darin Adams—the Police Chief—have failed to enforce that civil stalking injunction. She further alleges that Defendant Chad Dotson—the Iron County

---

[1] Docket No. 20, filed August 21, 2025.

[2] Docket No. 21, filed August 21, 2025.

[3] The Court can take judicial notice of the underlying state court record. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008).

[4] Case No. 21050023 (Fifth Judicial District, Cedar City, Iron Cnty., Utah).

1

Attorney—oversaw the dismissal of criminal charges against Ms. Mallory related to violations of the civil stalking injunction.[5]

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of state law, due process, and equal protection. Defendants seek dismissal.

## II. MOTION TO DISMISS STANDARD

Because Plaintiff is proceeding *pro se*, the Court construes her Complaint liberally,[6] but will not assume the role of advocate for a *pro se* litigant.[7] In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[8] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[9] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[11]

---

[5] Case No. 221500643 (Fifth Judicial District, Cedar City, Iron Cnty., Utah).

[6] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[12] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[13]

In considering a motion to dismiss, a district court considers not only the complaint "but also the attached exhibits,"[14] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[15] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[16]

### III.  DISCUSSION

A.   DOTSON

Plaintiff's allegations against Dotson relate to his role as Iron County Attorney. Plaintiff claims that the criminal case against Mallory was dismissed by Deputy County Attorney David Hill "[u]nder Chad Dotson's supervision and knowledge."[17] As an initial matter, a review of the

---

[12] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[13] *Iqbal*, 556 U.S. at 679 (internal citations, quotation marks, and alterations omitted).

[14] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[15] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[16] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[17] Docket No. 1, at 4.

state court docket does not reveal any participation by Dotson in the criminal case. The action was initiated and ultimately dismissed by Hill. Regardless, the claim fails.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[18] Supervisory status alone does not create § 1983 liability.[19] Rather, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."[20] Plaintiff's conclusory allegations regarding Dotson's role in the criminal case against Mallory are insufficient to establish liability. She merely alleges that Dotson supervised Hill and knew of the dismissal. This is not enough to state a claim under § 1983.

Even assuming that Dotson played some role in the decision to dismiss the charges against Mallory, he is immune. The Tenth Circuit has held that "a prosecutor's activities related to initiating and pursuing a criminal prosecution and presenting the state's case at trial are absolutely immune from liability."[21] This includes the decision to dismiss charges.[22] Plaintiff's allegations relate to the prosecutor's efforts in initiating and pursuing the criminal prosecution in the underlying case and the decision to ultimately dismiss them. Such actions are protected by absolute prosecutorial immunity. In light of this, Plaintiff's claims against Dotson are subject to dismissal. As such, the Court need not address the other arguments made by Dotson.

---

[18] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

[19] *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).

[20] *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and citation omitted).

[21] *Glaser v. City & Cnty. of Denv., Colo.*, 557 F. App'x 689, 705 (10th Cir. 2014).

[22] *Joseph v. Yocum*, 53 F. App'x 1, 3 (10th Cir. 2002) (holding that "a prosecutor's decision as to when to dismiss charges is entitled to absolute prosecutorial immunity because it is 'intimately associated with the judicial phase of the criminal process'") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

B.    ADAMS AND TOPHAM

    *1.*    *State Law Claims*

Plaintiff alleges that Adams and Topham have violated a number of provisions of Utah state law.[23] Section 1983 provides a vehicle for a plaintiff to assert a violation of federal law by a state official.[24] However, "violation of state law cannot give rise to a claim under Section 1983."[25] Thus, to the extent Plaintiff is asserting a claim under § 1983 for those alleged violations, it is subject to dismissal.

Turning to the actual statutory provisions cited by Plaintiff, they do not provide a federal claim. Plaintiff claims that Defendants failed to comply with Utah's Government Records Access and Management Act ("GRAMA"). However, GRAMA details an administrative appeals process that is followed by a petition for judicial review in Utah state court.[26] Any complaint that Defendants violated the provisions of GRAMA should be addressed through this remedial process.

Next Plaintiff relies on Utah Code Ann. § 76-8-506, which makes it a criminal offense to provide false information to a law enforcement officer. This provision does not contain a private right of action but, rather, provides that a violation is a class B misdemeanor.[27] Where, as here,

---

[23] Docket No. 1, at 7 (citing Utah Code Ann. §§ 63G-2-101 *et seq.*, 76-8-506, 77-37-3, and 78B-7-119).

[24] *Jones v. City & Cnty. of Denv.*, 854 F.2d 1206, 1209 (10th Cir. 1988).

[25] *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1164 (10th Cir. 2003).

[26] Utah Code Ann. § 63G-2-400.5 to -406.

[27] *Id.* § 76-8-506(3).

the criminal provision does not provide a private right of action, Utah courts generally decline to recognize one.[28] Therefore, Plaintiff's claim under this provision is subject to dismissal.

Plaintiff's reliance on Utah's Victim Bill of Rights[29] fairs no better. The legislature has made clear that "[t]he failure to provide the rights in . . . Chapter 37, Victims' Rights, shall not constitute cause for a judgment against the state or any government entity, or any individual employed by the state or any government entity, for monetary damages, attorney fees, or the costs of exercising any rights under this chapter."[30] Instead, the proper recourse is to "file a complaint with a victim rights committee."[31]

Similarly, with respect to the enforcement of civil stalking injunctions "[n]o person or institution may be held criminally or civilly liable for the performance of, or failure to perform, any duty established by this chapter, so long as that person acted in good faith and without malice."[32] There are no allegations of bad faith or malice. Further, there is nothing to suggest that these provisions provide a private right of action. Therefore, Plaintiff's state law claims are subject to dismissal. As such, the Court need not decide whether the Utah Governmental Immunity Act bars her claims.

---

[28] *Youren v. Tintic Sch. Dist.*, 2004 UT App 33, ¶ 4, 86 P.3d 771 ("When a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action, we generally will not create such a private right of action."); *Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974) (refusing to create private right of action where a criminal statute did not provide for private right of action, stating that was "a matter best left to the legislature").

[29] Utah Code Ann. § 77-37-3.

[30] *Id.* § 77-38-11(8).

[31] *Id.* § 77-38-11(1).

[32] *Id.* § 78B-7-113(3).

### 2. Due Process

Plaintiff also alleges that Defendants' failure to enforce the civil stalking injunction violates her due process rights. However, the Supreme Court has held that a police officer or department's failure to enforce a protective order cannot be the basis of a federal due process claim.[33] Given this clear Supreme Court precedent, Plaintiff's due process claim fails.

### 3. Equal Protection

"Although there is no general constitutional right to police protection, the state may not discriminate in providing such protection."[34] "Equal protection is essentially a direction that all persons similarly situated should be treated alike."[35] "[T]o assert a viable equal protection claim, [a] plaintiff[ ] must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]."[36] "Upon this showing, she must then demonstrate that the state actor's differential treatment of her cannot pass the appropriate standard of scrutiny."[37]

---

[33] *See Castle Rock v. Gonzales*, 545 U.S. 748, 766 (2005) (holding that police departments have substantial discretion when enforcing protective orders and that "[i]t is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a 'property' interest for purposes of the Due Process Clause"); *id.* at 768 ("We conclude, therefore, that respondent did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband."); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Phillips v. Kerns*, 483 F. App'x 400, 402 (10th Cir. 2012) (stating that "the Supreme Court has made clear . . . that there is no right under the Due Process Clause, either procedural or substantive, to have the police enforce a restraining order or to arrest some third party").

[34] *Watson v. City of Kan. City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).

[35] *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (internal quotation marks and citation omitted).

[36] *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

[37] *Dalton v. Reynolds*, 2 F.4th 1300, 1308 (10th Cir. 2021).

The level of scrutiny depends on the conduct alleged. For example, "[i]f the challenged government action implicates a fundamental right, or classifies individuals using a suspect classification, such as race or national origin, a court will review that challenged action applying strict scrutiny."[38] Thus, if Plaintiff was able to allege that Defendants were refusing to enforce the civil stalking injunction based on her race, for instance, she may be able to make out a valid equal protection claim. And, depending on the nature of the alleged disparate treatment, Plaintiff may be able to overcome Defendants' claims of qualified immunity.[39]

However, Plaintiff's Complaint fails to provide much detail on her equal protection claim. She vaguely alleges that Defendants are enforcing other injunctions but discriminating against hers.[40] This is insufficient. But it is possible that Plaintiff could amend her complaint to address her deficient allegations to state a proper claim.[41] As such, it is recommended that Plaintiff be given the opportunity to amend her Complaint to add additional allegations as to shore up her equal protection claim.

## IV.  CONCLUSION AND RECOMMENDATION

For these reasons, the undersigned recommends that Chad Dotson's Motion to Dismiss (Docket No. 21) be GRANTED and that Darin Adams and Matthew Topham's Motion to Dismiss (Docket No. 20) be GRANTED as to Plaintiff's state law and due process claims and to allow Plaintiff to amend her equal protection claim.

---

[38] *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008).

[39] *See Dalton*, 2 F.4th at 1309–12; *Price-Cornelison*, 524 F.3d at 1109–115; *Watson*, 857 F.2d at 694–97.

[40] Docket No. 1, at 3.

[41] *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) ("If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.") (internal quotation marks and citation omitted).

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 26th day of September, 2025.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge